**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dale Eric HAVIER, Defendant–Appellant.**

No. 97–10500.

United States Court of Appeals,
Ninth Circuit.

Submitted and Argued July 15, 1998.

Decided Sept. 9, 1998.

Victoria Brambl, Assistant Federal Public Defender, Tucson, AZ, for defendant–appellant.

Virginia C. Kelley and Linda C. Boone, Assistant United States Attorney, Appellate Section, Phoenix, AZ, for plaintiff–appellee.

Before: CHOY, REINHARDT, and THOMPSON, Circuit Judges.

CHOY, Circuit Judge:

### Introduction

Defendant–Appellant Dale Eric Havier ("Havier") appeals the revocation of his supervised release for disorderly conduct with a deadly weapon. Havier argues that he did not receive adequate notice of the charge prior to his revocation hearing.

We VACATE and REMAND.

### Factual and Procedural Background

On August 11, 1994 Havier pled guilty to assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 1153 and 113(f). On December 19, 1994 he was sentenced to 34 months imprisonment followed by 36 months supervised release.

On December 4, 1996 a petition to revoke the defendant's supervised release was filed.[1]

It alleged that Havier had violated a condition of his release by absconding from a community corrections center. Accordingly, the district court issued a warrant for Havier's arrest.

On June 4, 1997 the police were dispatched to an apartment in response to a "family fight" call. One of the persons inside the apartment, later identified as Havier, explained to the 911 operator that he was "wanted" and had a firearm, but did not want to hurt anyone. The operator conveyed this information to the responding officers.

Upon their arrival, the police heard fighting inside the apartment. By telephone communication through their dispatcher, the officers requested that the occupants exit the apartment. A woman came out first, followed by a small child. Havier came outside next, wearing shorts. Then he stepped back inside the apartment, this time exiting in a long coat and carrying a rifle. The rifle was pointed down toward the ground along his right side; his finger was around the trigger guard. At no time did Havier point the rifle at anyone; he never threatened to shoot anyone, nor did he make threatening statements of any kind.

The officers gave Havier at least two loud verbal warnings to put the rifle down. But he did not comply. Instead, Havier made a motion to walk toward the police. At this point, one officer shot Havier with a non-lethal flex baton. Havier fell to the ground, and the police arrested him without further incident. It was later determined that the rifle was unloaded, and Havier did not have ammunition for it on his person.

On June 24, 1997 a supplemental petition to revoke Havier's supervised release was filed to reflect his conduct during the June 4 arrest. It described his conduct as a crime of violence, a Grade A violation. The supplemental petition also alleged the use of marijuana, a Grade C violation.

On September 23, 1997 the district court began an evidentiary hearing. There was no dispute over the Grade C violation for marijuana use.[2] But at the close of all evidence,

---

1. This petition was later dismissed.

2. This issue is not relevant to this appeal.

the district court judge and counsel for both sides argued over what offenses had been proven stemming from Havier's conduct during the June 4 arrest. The Government's first suggestion, felon in possession of a firearm, was rejected because the supplemental petition did not charge Havier with that crime. Additionally, the district court expressed doubt that Havier's conduct rose to the level of aggravated assault on a police officer. At the end of the evidentiary hearing, the district court decided to let the parties research two crimes: Failure to obey a police officer and reckless display of a weapon, a lesser included offense of aggravated assault.

At the October 22, 1997 dispositional hearing, the failure to obey a police officer was found to be a traffic violation and not considered further. The argument focused on whether the evidence supported a Grade A or B violation. The district court rejected the Government's contention that Havier's conduct constituted a Grade A violation as a crime of violence. However, the district court found evidence of a Grade B violation-disorderly conduct with a deadly weapon, a lesser-included offense of aggravated assault. Thus, Havier was sentenced to 15 months imprisonment.

This appeal followed.

### Standard of Review

■ Whether a defendant received sufficient notice to satisfy due process incorporated by Fed.R.Crim.P. 32.1 is reviewed de novo. *See American–Arab Anti–Discrimination Committee v. Reno,* 70 F.3d 1045, 1066 (9th Cir.1995) (mixed questions of law and fact implicating constitutional rights are reviewed de novo). A due process violation at a revocation proceeding is subject to harmless error analysis. *See, e.g., United States v. Walker,* 117 F.3d 417, 420–21 (9th Cir.1997).

### Analysis

■ The Supreme Court has defined certain minimal due process requirements for parole revocation. *See Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). It has also extended these protections to probation revocation. *See Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36

L.Ed.2d 656 (1973). We have held since that Fed.R.Crim.P. 32.1, which applies to supervised release revocation, incorporates these minimal due process requirements as well. *See United States v. Martin,* 984 F.2d 308, 310 (9th Cir.1993).

■ Specifically, a defendant is entitled to "written notice of the alleged violation" at his revocation hearing. Fed.R.Crim.P. 32.1(a)(2)(A). Havier argues that the petition to revoke his supervised release did not provide sufficient notice of the Government's intent to charge him with aggravated assault with a deadly weapon or the lesser-included offense of disorderly conduct with a deadly weapon. We agree.

■ The supplemental petition charged the following:

> Violation of standard condition # 1: "You shall not commit another federal, state, or local crime during the term of supervision."

> A grade A violation 7B1.1(a)(1).

> On June 4, 1997, the defendant's conduct during his arrest by Tucson Police constituted an offense with the element of eminent [sic] life-threatening danger to law enforcement personnel. Therefore, Havier could have been charged with a "Crime of Violence," per 4B1.2, Application Note 2.

The petition's reference to two sections of the sentencing guidelines provided limited additional information. Section 7B1.1(a)(1) defines a Grade A violation as:

> [C]onduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm . . . or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years.

U.S.S.G. § 7B1.1(a)(1).

Furthermore, section 4B1.2 defines "crime of violence" as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). The

Commentary lists "aggravated assault" as one of several examples of crimes of violence.

The Government argues that all of this information constituted sufficient notice since there could be no misunderstanding of the date, location, or individuals involved in the alleged violation. The Government relies on our earlier opinion in *United States v. Tham,* 884 F.2d 1262 (9th Cir.1989). In that case, the petition notified the defendant that he violated "Condition No. 2 of the conditions of probation by associating with a convicted felon." *Id.* at 1265. Since the petition specified the dates, location, and individuals involved, we found sufficient notice. *Id.*

Although the petition in Havier's case provided notice of the date, location, and individuals involved, *Tham* remains different in one important respect: The charge in that case was itself evident from the condition of probation that the defendant was alleged to have violated-associating with a convicted felon. Combined with this statement of condition violated, the information about the date, location, and individuals involved was sufficient for the defendant to identify the specific offense.

Unlike *Tham,* Havier's violation of "standard condition # 1" alluded only to "another federal, state, or local crime" that had been committed. In this type of situation, it would be unrealistic to expect a defendant to predict the specific statute which the government intended to charge him with violating. In fact, during Havier's hearing the district court judge and counsel themselves appeared to be speculating about which Arizona state law violations could have or should have been alleged in the revocation petition. A variety of offenses were proposed, including felon in possession of a firearm, assault on a police officer, and reckless display of a weapon. One offense proposed, failure to obey a police officer, turned out to be a traffic violation. In light of this confusion over the proper charge, Havier could not be expected to predict the one statute-A.R.S. § 13-2904-upon which the Government and judge would settle. Nor should he be expected to defend against each and every possible charge.

Furthermore, the petition to revoke Havier's supervised release may have affirmatively *misled* the defense to believe that Havier was being charged with "endangerment" under A.R.S. § 13-1201. Under that statute, a person commits a crime by "recklessly endangering another person with a substantial risk of imminent death or injury." Defense counsel could have believed, quite reasonably, that when the petition alleged that defendant's conduct "constituted an offense with the element of eminent [sic] life-threatening danger," it was referring to § 13-1201. As a result, the petition may have provided something worse than no notice at all. It may have deceived the defendant into believing he was being charged with another offense, unrelated to the one on which the district court ultimately settled. Of course, a finding of inadequate notice in no way depends on the presence of such affirmative misrepresentation.

Therefore, the Government's argument that there could be no confusion over this "single, clearly identifiable incident" is misdirected. While the *factual incident* was identifiable, there remained confusion over the *legal statutory offense* being charged.

■ Granted, the Supreme Court has emphasized that criminals are not due the "full panoply of rights" in a revocation hearing, unlike in a criminal trial. *Morrissey,* 408 U.S. at 480, 92 S.Ct. 2593. But to the extent that the Supreme Court has established written notice of a defendant's violation as a minimum requirement of due process, such notice should be effective. Thus, when a revocation petition alleges the commission of a new crime and the offense being charged is not evident from the condition of probation being violated, a defendant is entitled to receive notice of the specific statute he is charged with violating.[3]

Our decision to highlight the importance of including a specific statute in the revocation petition is not without precedent. *See United States v. Kirtley,* 5 F.3d 1110 (7th Cir. 1993). In *Kirtley,* the revocation petition alleged that the defendant had committed

---

3. As a way to avoid close questions regarding adequate notice in the future, we encourage the

Government generally to provide a defendant with notice of the specific statute violated.

"another Federal, State, or local crime." *Id.* at 1113. It further described the defendant's crime as the "unauthorized practice of law, which is found in Chapter 38, Illinois Revised Statutes, Section 32–5 (1990)." *Id.*

Citing *Tham*, the court of appeals found sufficient notice. However, it seemed to be persuaded by the petition's inclusion of "some basic facts regarding the violation, such as the *specific statute* and rule Kirtley disobeyed." *Id.* (emphasis added). In fact, the court of appeals expressed its desire "to make clear that the notice Kirtley received represents the *minimum* acceptable notice." *Id.* at 1113 n. 4 (emphasis added).

Indeed, notice of the specific statute guarantees the fairest opportunity for the defendant to isolate the various elements of the crime and present facts in his defense. This would be consistent with the purpose of the written statement required by *Gagnon* and *Morrissey*—"to insure accurate factfinding with respect to any alleged violation." *Black v. Romano*, 471 U.S. 606, 613–14, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985).

■ The likely prejudice of failing to notify a defendant of a specific statute is typified by Havier's case. Accused in the petition of being a "life-threatening danger to law enforcement personnel," the defense strategy emphasized that Havier's conduct did not constitute a danger to police officers. For example, the defense elicited through cross-examination that Havier never pointed the gun at officers and that the gun was unloaded. Once this was established, the defense found it unnecessary for Havier to testify since it believed that the Government had failed to prove the Grade A violation alleged in the petition.

But had there been notice of the disorderly conduct with a deadly weapon charge, the defense asserts it would have followed a different strategy. Havier would have testified about his mental state, including his confusion, intoxication, and fright since intent to disturb the peace is an element of the crime. Of course, there is no guarantee that Havier would have testified given proper notice, but the record does not provide any basis to question this assertion.

Regardless of defense strategy, the Government contends that Havier's intent still might be inferred from the cross-examination of the police officers at the evidentiary hearing. But it is unpersuasive to equate any indirect inference of the defendant's intent through cross-examination of the officers with Havier's direct testimony. In fact, the district court emphasized that it had incomplete evidence of the defendant's intent because Havier did not testify. Given this comment by the district court, the Government's failure to provide adequate notice cannot be considered harmless error. Even though Havier's supervised release could have been revoked anyway for the marijuana use, that carries a lower sentence as a Grade C violation.

Finding that Havier received insufficient notice of the disorderly conduct with a deadly weapon charge, we vacate the decision below. We remand this case to the district court for further proceedings not inconsistent with this opinion.

VACATED and REMANDED.