UNITED STATES of America, Plaintiff–Appellee,

v.

Conrado SESMA–HERNANDEZ, Defendant–Appellant.

No. 99–10491.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 2000

Filed Aug. 2, 2000

Jason F. Carr, Assistant Federal Public Defender, Las Vegas, Nevada, for the defendant-appellant.

Walter L. Ayers, Assistant United States Attorney, Narcotics & Violent Crimes Section, Las Vegas, Nevada, for the plaintiff-appellee.

Before: CANBY, REINHARDT, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Conrado Sesma–Hernandez appeals the district court's finding that he violated the conditions of his supervised release. We affirm.

After serving a term of imprisonment, Sesma was released and began serving a three-year term of supervised release on October 8, 1998. In July of 1999, a petition was filed asking that his supervised release be revoked due to a number of violations.

The petition asserted that Sesma had committed the state crime of Battery/Domestic Violence (Misdemeanor), and specifically referred to the criminal complaint filed against him in the Las Vegas Municipal Court. That complaint described the crime and identified the state statute that Sesma had violated. It and the petition described a violent attack by Sesma on his girlfriend, which left her bruised and bloody and with a chipped tooth. The petition (as later amended) also asserted that Sesma had violated his probation terms by failing to fulfill his reporting, drug testing and other obligations on specified dates.

After an evidentiary hearing, the district court declared that:

> The Court finds that the government has established by a preponderance of the evidence that the violations that were set forth in the petition have occurred. Revocation is proper if the Court finds—the Court finds that violation of the conditions have been established by a preponderance of the evidence and that the violation warrants revocation.

Sesma then appealed.

Sesma's first claim is that he was not given sufficient notice about the nature of the criminal violation because the specific statutory section was not cited in the petition to revoke. We disagree. He was not only told the title of the charge, but was specifically referred to the state court complaint, which clearly set forth the state code section and the particular part of it violated—battery. Lest there be any doubt, the petition went on to describe the facts which showed that he had, indeed, brutally beaten a woman. He could hardly have been puzzled about what he had to defend against. The notice was plainly sufficient. *See Morrissey v. Brewer*, 408

U.S. 471, 486–87, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1972); *United States v. Havier*, 155 F.3d 1090, 1092 (9th Cir.1998).[1]

■ Sesma next asserts that the district court erred when it refused to admit evidence that one of the witnesses, who testified that she saw him beating a woman, may not have been able to identify the victim. The district judge, who was the trier of fact, was unimpressed with that testimony. In fact, she found the testimony so asthenic that she struck it as irrelevant. She was of the opinion that an ability to identify the beaten victim was of no real import because of the clarity with which Sesma himself had been identified— the witnesses said that they had seen him beating the victim as they drove up. The ability to see and identify the perpetrator was only somewhat connected to the ability to later identify a victim, who at the scene had a greatly swollen lip, torn clothing, blood all over her face, and knocked out or broken teeth. However, the excluded evidence does seem to have some relevance. We need not decide whether excluding that evidence was an abuse of discretion. If there was error, given the clarity of the evidence against Sesma and the fact that the district judge, who was the trier of fact, found the excluded evidence exceedingly weak at best, we hold that any error was harmless. *See Havier*, 155 F.3d at 1092; *cf. United States v. Lopez–Alvarez*, 970 F.2d 583, 588–89 (9th Cir.1992) (harmless error regarding exclusion of evidence at a criminal trial).

■ Finally, Sesma asserts that he was denied due process because he was not afforded written findings. *See Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604 (fact finders must make "a written statement . . . as to the evidence relied on and the

reasons for [revocation]"). It is true, as he says, that no separate set of written findings was prepared. But we have held that oral findings on the record will suffice. *See United States v. Daniel*, 209 F.3d 1091, 1093 (9th Cir.), *amended by* 216 F.3d 1201 (9th Cir.2000); *United States v. Rilliet*, 595 F.2d 1138, 1140 (9th Cir.1979). More than that, it is sufficient for the district court to state that there is " '[n]o doubt in the Court's mind that the government has sustained its burden,' " if the record clearly "discloses sufficient evidence to establish a violation." *Daniel*, 209 F.3d at 1094. The district court's statement in this case met that standard. Moreover, the evidence in the record was clearly sufficient to establish the charged violations. We have already discussed the evidence of Sesma's battering of a woman. The charges of failure to fulfill his other obligations were also supported by the evidence.[2] Thus, he was not denied due process.

AFFIRMED.

REINHARDT, Circuit Judge, concurring:

I concur in Judge Fernandez's opinion for the court because I am constrained to do so by this court's recent decision in *United States v. Daniel*, 209 F.3d 1091 (9th Cir.), *amended by* 216 F.3d 1201 (9th Cir.2000). I write separately, however, to express my concern about the lawless state of the law in our circuit concerning the necessity of findings in probation revocation proceedings, and to suggest that en banc consideration of this question is warranted in view of our disregard of controlling Supreme Court precedent.

---

**1.** Sesma's suggestion that he could not be found to have committed battery because he was charged with battery/domestic violence is otiose. Even in indictments, lesser included offenses need not be pled. *See United States v. Gavin*, 959 F.2d 788, 791 (9th Cir.1992).

**2.** Sesma's assertion that he might have been in INS custody at the time does not help his position. He might have been a lot of places doing a lot of things. If he was in custody and, thus, unable to report, etc., he should have known that he was and should have come forward with some evidence to show that fact.

In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court first held that revocation of parole must comport with procedural due process. Although the Court declared its unwillingness "to write a code of procedure," it identified a "few basic requirements" that must accompany any future revocation. *Morrissey*, 408 U.S. at 488, 490, 92 S.Ct. 2593. Among those requirements is "a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole." *Id.* at 489, 92 S.Ct. 2593. The Court subsequently made clear that due process protections apply to the revocation of probation "under the same conditions specified in *Morrissey v. Brewer* . . . ." *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Nevertheless, we have just completed the burial service for the *Morrissey–Gagnon* written statement requirement in the Ninth Circuit.

The rationale for imposing procedural restraints upon the government's revocation of a discretionary grant of freedom is that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Morrissey*, 408 U.S. at 482, 92 S.Ct. 2593. Moreover, the "parolee is not the only one who has a stake in his conditional liberty." *Id.* at 484, 92 S.Ct. 2593. Society has an interest in "treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness." *Id.* The written statement requirement provides a particular benefit in that it "helps to insure accurate factfinding with respect to any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *Black v. Romano*, 471 U.S. 606, 613–14, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985).

In *United States v. Rilliet*, 595 F.2d 1138 (9th Cir.1979), we rejected the appellant's argument that his probation revocation should be reversed on the ground that "the district court did not make written findings." *Id.* at 1140. We upheld the revocation because the judge had "orally stated his reasons [for revocation] on the record." *Id.* We thus deemed the written findings requirement satisfied by a written transcript of oral proceedings that contained the necessary findings and reasons. Thereafter, for over twenty years—until *Daniel*—we followed the rule requiring a statement of findings and reasons on the record. *See, e.g., United States v. Garcia*, 771 F.2d 1369, 1371 n. 2 (9th Cir.1985).

In *Daniel*, we commenced our opinion rather mundanely by reaffirming our well-established rule. We expressly acknowledged the requirements of *Morrissey* and *Gagnon* and then explicitly held that "oral findings made on the record by a district court in a revocation proceeding comport with due process." *Daniel*, 209 F.3d at 1093. However, several paragraphs later, without any discussion or explanation, we appear to have completely changed course and to have abandoned our rule and the Supreme Court's mandate. Following our initial accurate statement of the law, we summarily and inexplicably stated that all that is required is that "the record establishes" that the probationer's actions support revocation and that the district judge is satisfied that a violation occurred. *Id.* Under that regime, no statement of findings or reasons by the court need appear on the record. So Judge Fernandez's opinion reads *Daniel*, and I cannot disagree; and it is *Daniel* that now binds this panel.

The effect of *Daniel*, unfortunately, was to dispense altogether with the long-standing requirement that a revocation of probation be accompanied by findings that set forth the evidence supporting the court's action and the court's reasons for its decision. In doing so, we abandoned a critical procedural protection deemed essential by the Supreme Court. Moreover, the requirement as "redefined" in *Daniel* adds

nothing to the law as it otherwise stands. In no case would a district court revoke probation unless it were satisfied that "the record establishes" that revocation is warranted and that a violation occurred. Perhaps as important, at least from a jurisprudential standpoint, *Daniel*, and now our opinion in this case, directly conflict with the law as propounded by the Supreme Court. *See Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593; *Gagnon*, 411 U.S. at 782, 93 S.Ct. 1756; *Black*, 471 U.S. at 613–14, 105 S.Ct. 2254. Not even a glimmer is left of the written statement requirement expressly set forth in those Supreme Court cases.

Finally, the case before us exemplifies the difficulties that reviewing courts will face when district judges, under the authority of *Daniel*, revoke probation without findings or explanation. Here, the government alleged eight separate violations in its revocation petition, and the transcript does not clearly identify "the evidence relied on and the reasons for revoking" probation. *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593. In fact, there is a strong indication that the district judge may have impermissibly relied upon evidence outside the record in reaching her determination; she pointedly referred to Sesma–Hernandez's "prior history" of "problems" unrelated to the government's petition and expressed her view that "under the rules that govern this, I can consider the intervening conduct of the—of the probationer and of the basis of the original offense." Absent findings that specify what evidence in particular the court found adequate and why that evidence justified revocation, this court's task becomes all the more onerous. Moreover, probationers will understandably feel deprived of the "basic fairness" that the Supreme Court requires and that it envisioned would forestall "reactions to arbitrariness." *Morrissey*, 408 U.S. at 484, 92 S.Ct. 2593.

District courts presiding over revocation hearings in this circuit will surely have

difficulty ascertaining what the law now demands of them. Should they abide by the Supreme Court's directives or are they free to follow our contrary case law? It would seem to be our obligation to invoke the en banc process so as to reaffirm our prior rule that, at a minimum, due process requires that the record contain the court's findings regarding the evidence it relied on and the reasons underlying its revocation of probation.