**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-4730

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WILLIAM A. BRENNAN, III,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Samuel G. Wilson, District Judge.  (7:02-cr-00059-sgw)

Argued:  May 16, 2008                    Decided:  July 22, 2008

Before WILLIAMS, Chief Judge, TRAXLER, Circuit Judge, and Terry L. WOOTEN, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Paul Graham Beers, GLENN, FELDMANN, DARBY & GOODLATTE, Roanoke, Virginia, for Appellant.  C. Patrick Hogeboom, III, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.  **ON BRIEF:** John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William A. Brennan, III, raises a number of challenges to the district court's order revoking his term of supervised release and imposing a 24-month prison sentence under 18 U.S.C.A. § 3583(e) (West 2000 & Supp. 2008). We affirm.

I.

On April 14, 2003, Brennan was sentenced to concurrent prison terms of twenty months for conspiracy to defraud the United States government, see 18 U.S.C.A. § 371 (West 2000), and interstate transportation of stolen goods, see 18 U.S.C.A. § 2314 (West 2000). The sentencing court also imposed a three-year term of supervised release to follow Brennan's period of incarceration. The order of judgment included the mandatory condition of supervised release that "the defendant not commit another Federal, State, or local crime during the term of supervision." 18 U.S.C.A. § 3583(d) (West Supp. 2008). Brennan was released from prison on June 6, 2004.

On June 7, 2005, one year after his release from prison, Brennan was arrested in West Virginia for the June 6 murder of his wife, Lisa Brennan. Brennan's probation officer immediately filed a Supervised Release Violation Report recommending that Brennan's term of supervised release be revoked on the grounds that Brennan violated the mandatory condition of release that he not commit another crime. The revocation petition classified Brennan's

2

violation as a Grade A violation, see U.S.S.G. § 7B1.1(a)(1), and, in light of his category I criminal history, calculated a guideline range of 12 to 18 months, see U.S.S.G. § 7B1.4(a).

Accompanying the Violation Report was the probation officer's petition for an arrest warrant for Brennan for violating the conditions of supervised release. The warrant petition alleged that, "[o]n June 7, 2005, William Brennan was arrested for the murder of Lisa Brennan in Logan County, West Virginia." J.A. 29. No other factual allegations about the arrest or the underlying facts were included in the petition. On June 14, 2005, the district court issued the warrant and directed that it be filed with West Virginia officials as a detainer pending resolution of the state murder charges. The warrant was executed in October 2006, while Brennan was in jail awaiting trial on the murder charge.

In April 2007, Brennan went to trial on a reduced charge of voluntary manslaughter in the death of Lisa Brennan. The jurors were unable to reach a verdict, and the state judge was forced to declare a mistrial. Immediately after Brennan's trial, he was transferred to federal custody and brought before the district court on the charge that he violated the conditions of his supervised release. Brennan refused his court-appointed counsel and insisted on proceeding pro se, but the district court directed that counsel remain in a stand-by capacity.

3

Brennan's revocation hearing was held on July 11, 2007, after the expiration of his three-year term of supervised release in June 2007. The evidence presented at the revocation hearing showed that Brennan ran numerous errands on the morning of June 6 and returned home at 2:00 p.m. In a written statement for investigators, Brennan claimed that when he noticed Lisa was gone, he looked for her purse but was unable to find it. The evidence showed, however, that Brennan made at least two phone calls that day to friends and relatives during which Brennan indicated that Lisa was missing and that her purse was still in their home.

Later that afternoon, Brennan picked up his teenage son from a gym and revealed that Lisa had been missing for a few hours. When they returned home, Brennan asked his son to clean the house. The boy did so, including removing and laundering the sheets from his mother's bed -- something that he typically did not do when cleaning the house. Following dinner, Brennan decided to look outside their trailer for a note and to search various vehicles that were parked on Brennan's property. After checking several cars, Brennan reached a Toyota Camry and decided to look inside of the trunk. Before doing so, however, he examined the trunk for fingerprints. He then opened the trunk of the Camry and saw the body of his wife, as well as her purse and some shoes.

4

Brennan called 911 at 10:00 p.m. on June 6, 2005, and reported that he had discovered his wife's body. Brennan declined the dispatcher's offer to help him perform CPR because he was certain Lisa Brennan was dead: "Buddy, I don't want to move her. She is clearly dead. I tried to pour water down her mouth and she is stiff as a board. She has been in there since 2:00." J.A. 180. Brennan then immediately added, "I have been looking for her since 2:00." J.A. 180. There was also evidence that, when responding officers arrived at the scene, Brennan was extremely calm and unemotional.

The Logan County medical examiner set the time of death between 1:00 p.m. and 3:00 p.m, a period of time during which Mike Caldwell, one of Brennan's business associates, tried unsuccessfully to call Brennan several times. The medical examiner initially determined that Lisa died as a result of blunt force trauma, but ultimately concluded that Lisa's death occurred as a result of being shaken violently.

The government also presented evidence of an incident that occurred one month prior to Lisa Brennan's murder, in which Lisa urinated on herself in their van, prompting Brennan, in front of a witness, to "jerk[] Lisa out of the van by the arm, and spray[] her with a steam genie front and back." J.A. 191.

At the revocation hearing, Brennan highlighted the lack of DNA or fingerprint evidence linking him to Lisa's death. Also, there

5

was no evidence presented of scratches or bruises sustained by Brennan, but investigators noticed several scratches on Brennan's son.

The district court concluded that the evidence showed Brennan was at least an accessory to his wife's murder, which is a violation of his supervised release:

> Lisa Brennan was the victim of an unlawful felonious homicide. The evidence presented . . . is not sufficient for the Court to determine whether that unlawful felonious homicide was first degree murder, second degree murder or involuntarily manslaughter. Nevertheless, she was the victim of an unlawful felonious homicide. The likely cause of death was blunt force head trauma caused by acceleration and deceleration. Essentially, she was shaken to death.

> William Brennan was a principal or accessory to the unlawful felonious homicide. In reaching that conclusion, I look to the following facts which I find more likely true than not.

> First, Brennan previously had been abusive and cruel to Lisa as exemplified by the incident where . . . [Brennan] sprayed [Lisa] with a Steam Genie. . . .

> Second, Brennan showed little emotion in content or intonation when dealing with law enforcement officers under circumstances that some emotion would be expected from a person who had just suffered a grievous loss. Indeed, even the dialogue in the 9-1-1 call lacks any hint of the kind of emotion I would expect. . . .

> Third, nothing remotely suggested that his wife might be in the trunk of the car. Yet he looked there. Obviously, this is a highly unusual place to look in the absence of some indicia that he should be looking for his wife in the trunk.

> I have no hesitancy in concluding that he knew she was there and was not looking for her. The search was a charade or ruse. Mr. Brennan, either assisted or unassisted, put her in that trunk.

J.A. 179-81.

The district court concluded, based on the evidence, that Brennan had committed a crime in violation of his conditions of supervised release.  The court found, however, that the recommended sentencing range of 12-18 months was inadequate for the seriousness of Brennan's offense.  The court imposed the statutory maximum of two consecutive twenty-four month terms.   See 18 U.S.C.A. § 3583(e).  Brennan filed this appeal.[1]

II.

A.

Brennan first argues that the district court lacked jurisdiction over the revocation proceedings and erroneously denied his motion to dismiss.  Because Brennan's revocation hearing took place after his term of supervised release expired, the jurisdiction of the district court was governed by § 3583(i):

> The power of the court to revoke a term of supervised
> release for violation of a condition of supervised
> release, and to order the defendant to serve a term of
> imprisonment . . . extends beyond the expiration of the
> term of supervised release for any period reasonably
> necessary for the adjudication of matters arising before
> its expiration if, before its expiration, a warrant or

---

[1]While the appeal was pending before this court, Brennan was retried in West Virginia state court.  On February 25, 2008, he was convicted by a jury of voluntary manslaughter in the death of Lisa Brennan.  We note this fact for the sake of completeness; this subsequent conviction, however, has no bearing on the disposition of this appeal.

summons has been issued on the basis of an allegation of such a violation.

18 U.S.C.A. § 3583(i) (West 2000).

The warrant in this case was issued in June 2005 and executed in October 2006, clearly before the expiration of Brennan's supervised release. Brennan argues, however, that a "warrant" did not technically issue because the warrant did not contain sufficient factual allegations to establish probable cause; it merely stated that Brennan had been "arrested for the murder of Lisa Brennan in Logan County, West Virginia." J.A. 33. This claim is without merit.

Section 3583(i) grants federal courts reach-back jurisdiction if, prior to the expiration of the term of supervised release, "a warrant or summons has been issued on the basis of an allegation of such violation." The text of the statute does not require that the warrant be founded upon probable cause or sworn allegations in order for the district court to exercise jurisdiction. See United States v. Garcia-Avalino, 444 F.3d 444, 445-46 (5th Cir. 2006); cf. United States v. Presley, 487 F.3d 1346, 1349 (11th Cir. 2007) ("If Congress had wanted, it easily could have said that for purposes of supplying reach back jurisdiction under § 3583(i) a summons must be supported by sworn facts. It didn't say that."). Nevertheless, there is a disagreement among the circuits regarding whether a warrant issued under § 3583(i) must strictly comply with the Fourth Amendment in order to vest the court with jurisdiction. Compare

8

<u>Garcia-Avalino</u>, 444 F.3d at 445 (concluding that § 3583 contains no "implicit sworn-facts requirement embedded in the very meaning of the word 'warrant' as a legal term" and that the court's jurisdiction under § 3583(i) did not hinge on whether the warrant complied with the Fourth Amendment sworn-facts requirement) <u>with</u> <u>United States v. Vargas-Amaya</u>, 389 F.3d 901, 904 (9th Cir. 2004) (concluding that, as used in § 3583(i), "warrant" is a "document that is based on probable cause and supported by sworn facts").

We need not take a position on this question. We conclude that, under either view of the statute, the warrant issued by the district court was sufficient to afford the court jurisdiction under § 3583(i) to adjudicate the revocation petition. The petition for the warrant identified the specific condition that Brennan allegedly violated -- the no-other-crimes condition -- and provided the date and location of Brennan's arrest, as well as the charge upon which he was arrested. This was sufficient to establish probable cause to believe Brennan violated his conditions of supervised release. In our view, it was unnecessary for the warrant to include additional facts or more detail about the alleged murder because Brennan was not being arrested for murder under the warrant but for violating his conditions of supervised release. The fact that state authorities formally charged and arrested Brennan for murder is enough to supply probable cause that a violation occurred. We conclude that the petition and resulting

9

order issuing the warrant satisfied the requirements of § 3583(i), preserving the district court's jurisdiction to address Brennan's alleged violation that occurred during his supervised release period.

B.

Next, Brennan contends that the district court abused its discretion in refusing to grant a continuance of the revocation hearing. Immediately before the revocation hearing, Brennan requested that the district court continue the hearing until the completion of his manslaughter retrial. Brennan argued that he could not take the stand at the revocation hearing without risking that his testimony would be used against him if he took the stand in the retrial of his manslaughter charges. Although Brennan did not testify in his own behalf at the first manslaughter trial, he claims that the district court's denial of a continuance effectively eliminated his choice and precluded him from taking the stand in the retrial, in violation of his Fifth Amendment rights. We disagree.

Brennan was not forced to remain silent and was free to testify at his retrial. Although Brennan faced certain risks in testifying at the revocation hearing, "[t]he Fifth Amendment does not immunize a defendant from all the potentially negative consequences of making such a choice." United States v. Jones, 299 F.3d 103, 111 (2nd Cir. 2002). Even if the district court's

10

refusal to grant a continuance required Brennan "to choose between asserting his right to silence and pursuing what he believed to be the most effective defense against revocation does not mean that [he] faced the kind and intensity of coercion that could deprive him of the right against compelled self-incrimination." Id.; see also id. at 109 (rejecting a "bright line rule that federal courts should delay revocation proceedings until after the disposition of state charges that form the basis of revocation requests"); cf. Lynott v. Story, 929 F.2d 228, 230 (6th Cir. 1991) ("It is well settled that a court is not constitutionally bound to postpone a probation revocation hearing pending conclusion of a federal or state criminal proceeding upon which parole revocation is sought.").

Furthermore, Brennan has failed to demonstrate that the district court's decision amounted to an abuse of discretion, and he has failed to specifically articulate how the court's ruling resulted in prejudice to him. See United States v. Bakker, 925 F.2d 728, 735 (4th Cir. 1991) ("To prove that the denial of the continuance constitutes reversible error, [the defendant] must demonstrate that the court abused its broad discretion and that he was prejudiced thereby." (internal quotation marks omitted)).

We find no error in the district court's refusal to grant a continuance.

11

C.

Brennan next raises a series of arguments stemming from the fact that the district court's order did not specify whether Brennan acted as a principal or an accessory in his wife's murder. Brennan argues that he was deprived of his due process right to notice of the charges against him because the district court revoked his supervised release based on the finding that Brennan was "at least" an accessory to Lisa's murder, but the petition for revocation specified only murder as the basis for Brennan's violation.

Although revocation proceedings are not criminal trials to which the "full panoply" of constitutional rights attach, see Morrissey v. Brewer, 408 U.S. 471, 480 (1972), such proceedings are subject to certain minimum due process requirements, including "notice of the alleged violations." See Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973); see also Fed. R. Crim. P. 32.1(b)(2). Due process violations during a supervised release revocation hearing are subject to harmless error review. See United States v. Havier, 155 F.3d 1090, 1092 (9th Cir. 1998).

We reject Brennan's argument that the petition for revocation failed to give him sufficient notice to prepare a defense, concluding that any deficiency was harmless. Brennan does not suggest that his defense strategy would have been affected had he been expressly charged with being an accessory to his wife's

12

murder, conceding that accessory to murder before the fact is a lesser included offense arising from the same nucleus of operative fact.[2]

We likewise reject Brennan's argument that he was deprived of due process because the district court failed to articulate its specific basis for revoking his supervised release. Specifically, Brennan complains that the district court failed to explain what his role was in the killing of Lisa Brennan. Due process requires that the court's findings be "sufficiently complete to advise the parties and the reviewing court of the reasons for the revocation of supervised release and the evidence the decision maker relied upon." United States v. Copeland, 20 F.3d 412, 414 (11th Cir. 1994) (per curiam). Brennan contends that the district court's findings fail this standard because it is unclear whether the district court concluded that Brennan was an accessory after the fact or an accessory before the fact. This distinction is crucial, according to Brennan, because Brennan could not be convicted under West Virginia law of being an accessory after the fact to a murder carried out by his son. See W. Va. Code Ann. § 61-11-6; State v. McCallister, 357 S.E.2d 759, 761-62 (W. Va. 1987).

---

[2]To the extent Brennan argues that § 3583(i) permits "post-term revocation only when the warrant or summons is issued . . . on the specific basis of the alleged violation upon which revocation is ultimately based," we disagree based on the plain language of the statute. United States v. Naranjo, 259 F.3d 379, 382 (5th Cir. 2001) (italics omitted); see Presley, 487 F.3d at 1349-50.

The district court's findings were sufficiently clear to pass muster under the requirements of due process. It is evident from the record that the district court concluded that Brennan committed a crime in violation of the terms of his supervised release, acting either as the principal in his wife's killing or as an accessory. Nothing in the record remotely suggests that the district court found Brennan to be an accessory after-the-fact to a murder committed by his son. Accordingly, we conclude that the district court provided an adequate explanation for its revocation decision.

Finally, Brennan contends that the district court's order of revocation cannot stand because it is not supported by sufficient evidence. A district court need only find a violation of a condition of supervised release by a preponderance of the evidence. See 18 U.S.C.A. § 3583(e)(3). This court reviews the district court's decision to revoke supervised release for an abuse of discretion, see United States v. Davis, 53 F.3d 638, 642-43 (4th Cir. 1995). We will not disturb the court's underlying factual determinations absent clear error. See United States v. Carothers, 337 F.3d 1017, 1019 (8th Cir. 2003).

Brennan bases his sufficiency of the evidence argument on the district court's conclusion that the evidence presented was not sufficient for the court to determine whether Brennan was a principal or an accessory in the murder of his wife. We reject this argument. The evidence is sufficient to support the court's

14

conclusion that, based on a preponderance of the evidence, Brennan participated in his wife's killing as no less than an accessory.

D.

Finally, we affirm the consecutive 24-month sentences imposed by the district court following revocation of Brennan's supervised release. We will not disturb a sentence imposed after revocation of supervised release unless it is "'plainly unreasonable' with regard to those § 3553(a) factors applicable to supervised release revocation sentences." United States v. Crudup, 461 F.3d 433, 437 (4th Cir. 2006). We must determine initially whether the revocation sentence is unreasonable, a process that includes procedural and substantive components. See id. at 438. A revocation sentence is procedurally reasonable if the district court took into account the Chapter 7 policy statements and the applicable factors in § 3553(a). See id. at 440. The sentence is substantively reasonable if the court stated an appropriate basis for imposing a sentence within the statutory maximum. See id. Only if we determine that the sentence was unreasonable do we proceed to the question of whether the sentence was plainly unreasonable. See id. at 439 (explaining that the "plainly unreasonable" prong incorporates "the definition of 'plain' that we use in our 'plain' error analysis").

Brennan argues that his sentence is unreasonable because the district court considered an impermissible factor. In imposing a

15

24-month sentence instead of a sentence within the advisory 12-18 month range, the court explained that "it would trivialize supervised release under the circumstances here . . . when the crime involves the defendant's participation in the . . . unlawful felonious death and killing of his wife." J.A. 182. Brennan suggests that this statement reflects that the court improperly considered the seriousness of the offense. See Crudup, 461 F.3d at 439. The court's observation, however, is relevant to other required considerations, including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C.A. § 3553(a)(1) (West 2000) (emphasis added). Moreover, the district court expressly considered the Chapter 7 policy statements and the factors in § 3553(a) that are applicable to revocation sentences. We conclude, therefore, that Brennan's sentence is not unreasonable, much less plainly so.

## III.

For the foregoing reasons, we affirm the order of the district court.

AFFIRMED

16