UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4501

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DEAN ARTE LAMPKIN, JR., a/k/a Dean Arte Lampkin,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston.  Richard Mark Gergel, District Judge.  (2:12-cr-00312-RMG-1)

Submitted: January 5, 2018                          Decided:  April 17, 2018

Before MOTZ, TRAXLER, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Cody J. Groeber, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, South Carolina, for Appellant.  Beth Drake, United States Attorney, Columbia, South Carolina, Nathan Williams, Nick Bianchi, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant-Appellant Dean Arte Lampkin violated a condition of his supervised release by possessing marijuana with an intent to distribute. Accordingly, a district court revoked Lampkin's supervised release and sentenced Lampkin to twenty-four months of imprisonment. On appeal, Lampkin argues that the district court violated his due process rights by failing to provide him with adequate notice of his alleged violation and relied on insufficient evidence to conclude that he committed a Grade A violation by possessing marijuana with intent to distribute. For the reasons that follow, we affirm.

I.

On May 11, 2011, Lampkin was charged as a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). On March 15, 2013, Lampkin was sentenced to sixty months' incarceration and thirty-six months of supervised release. Lampkin was released to supervision on July 22, 2016.

On March 16, 2017, Detective Robert Edwards of the Berkeley County Sheriff's Office Drug Enforcement Unit posted his car about 100 yards away from 516 Horne Street in Moncks Corner, South Carolina. The Berkeley County Sheriff's Office had received an anonymous tip of drug activity at 516 Horne Street, and the Postal Service informed law enforcement that a package would be delivered to that address. Prior to the arrival of the Postal Service truck, Detective Edwards observed a gold Toyota Avalon parked in front of the house. Once the Postal Service truck arrived to deliver the package, Detective Edwards observed two men exit the gold Toyota. The men followed

2

the postman underneath the carport, and returned to the vehicle with a package. Detective Edwards continued to observe the vehicle remain parked for at least thirty minutes. During this time, no one entered or exited the vehicle. When the gold Toyota pulled away from the house, driving down Horne Street towards U.S. Highway 52, Detective Edwards radioed other law enforcement officers to continue to follow the vehicle.

Shortly after the gold Toyota turned off of Horne Street, Corporal Joe Seegars began to follow it. From this vantage point, Corporal Seegars observed four people in the vehicle; two in the rear and two in the front. Presumably, all four individuals were in the vehicle at the time two of the men retrieved the package. Within a few seconds, the gold Toyota made an abrupt lane change to turn left into a parking lot while failing to signal. Corporal Seegars pulled the vehicle over. As the gold Toyota began to slow down, Corporal Seegars noticed the right rear passenger door slightly open. Anticipating that one or more of the passengers would attempt to flee, he radioed for assistance. The gold Toyota finally came to a stop. As Corporal Seegars exited his vehicle, two of the passengers fled from the rear doors of the gold Toyota.

As the first officer at the scene, Corporal Seegars chose to pursue the passenger who fled from the right rear passenger door, later identified as co-defendant Preston Everette. Faced with the choice between pursuing one of the fleeing passengers or controlling the passengers who remained in the vehicle, Corporal Seegars decided to pursue Everette because he viewed Everette as the greatest threat to the public. Corporal Seegars noticed Everette attempt to pull a gun from his waistband. Additionally, Everette

3

was carrying a blue bag. Based on reasonable suspicion, Corporal Seegars ran after Everette while simultaneously radioing other law enforcement officers with a description of the other fleeing passenger.[1]

After chasing Everette for approximately twenty-five yards, Corporal Seegars tackled him and took him into custody. By this point, Detectives Tanner and Edwards arrived on the scene. Detective Tanner successfully detained the front-seat passenger and the driver, Lampkin.[2] Detective Edwards followed Corporal Seegars to retrieve the gun and blue Walmart bag that Everette dropped while he attempted to flee.

Law enforcement discovered several smaller bags containing large quantities of green plant material inside the blue Walmart bag. An ensuing search of the gold Toyota resulted in the discovery of three burnt hand-rolled cigars containing green plant material, generic plastic sandwich baggies, a digital scale, and a Postal Service box containing vacuum-sealed bags addressed to 516 Horne Street. Additionally, law enforcement discovered another small bag containing green plant material outside of the gold Toyota below the rear right passenger door. In total, law enforcement seized more than 500 grams of marijuana from the gold Toyota and the Walmart bag. Law enforcement also found $465 in cash on Lampkin's person. Following these discoveries, law enforcement arrested Lampkin and the other detained passengers for possession with intent to distribute marijuana.

---

[1] Law enforcement officers were unable to locate the other fleeing passenger.

[2] The driver and the front seat passenger complied with law enforcement.

## II.

The government charged Lampkin with violating the condition of his supervised release that he refrain from committing any federal, state, or local crime.[3] Paragraph two of the Supervised Release Violation Report charged Lampkin with a Grade A violation of his supervised release, alleging that "[o]n March 16, 2017, [Lampkin] was arrested by the Berkeley County Sheriff's Office for Possession with Intent to Distribute Marijuana." J.A. 16. Additionally, paragraph two detailed the factual background of the alleged offense by describing Lampkin's role in the offense as well as the quantity of marijuana seized by law enforcement.

Grade A violations include conduct which constitutes a federal, state, or local controlled substance offense that is punishable by a term of imprisonment exceeding one year. U.S.S.G. § 7B1.1(a)(1). Under South Carolina law, marijuana is a controlled substance and a first offense for possessing marijuana with intent to distribute is a felony subject to a term of imprisonment up to five years. S.C. Code §§ 44-53-190(D)(11),370(a)(1),(b)(2).

At his revocation hearing, Lampkin primarily contended that he merely committed a Grade C violation because he lacked the requisite intent to distribute marijuana. Grade C violations include conduct which constitutes a federal, state, or local offense that is

---

[3] The government charged Lampkin with five distinct violations of his supervised release. Because Lampkin only appeals his Grade A violation, we do not discuss Lampkin's other violations.

5

punishable by a term of imprisonment up to one year. U.S.S.G. § 7B1.1(a)(3). Under South Carolina law, a first or second offense for knowingly possessing fewer than twenty-eight grams of marijuana is punishable by a misdemeanor. S.C. Code § 44-53-370(c),(d)(4).

Lampkin offered into evidence a written statement signed by Everette which stated that Lampkin and the other passengers in the vehicle did not know that Everette had marijuana in his possession. Lampkin's girlfriend, Adrianna Span, also testified on his behalf. On cross-examination, Span testified that, after she drove to work, she let Lampkin use her Toyota so Lampkin could attend community service. Furthermore, Span testified that none of the drug evidence, including the plastic baggies and the digital scale, was present in her vehicle before she let Lampkin borrow her car.

Following Ms. Span's testimony, the district court held that there was ample evidence proving that Lampkin, at the very least, aided and abetted the commission of a drug transaction. Aiding and abetting the possession of a controlled substance with an intent to distribute is a felony offense subject to a term of imprisonment up to five years under South Carolina law. S.C. Code § 44-53-370(a)(1),(b)(2). As a result, the district court found that Lampkin committed a Grade A violation of his supervised release and sentenced him to twenty-four months in prison. Lampkin filed a timely appeal.

III.

Lampkin raises two issues on appeal. First, Lampkin contends that the district court violated his due process right to adequate notice pursuant to Federal Rule of

6

Criminal Procedure 32.1(b)(2)(A) and *Morrissey v. Brewer*, 408 U.S. 471 (1972). Specifically, Lampkin argues that the Supervised Release Violation Report failed to state the specific statute that Lampkin allegedly violated, and the district court improperly considered Lampkin's conduct as a violation of federal, rather than state, law. Second, Lampkin contends that the district court had insufficient evidence to find that Lampkin committed a Grade A violation of supervised release. We consider each issue in turn.

We ultimately conclude that the district court neither infringed upon Lampkin's due process rights nor abused its discretion by revoking Lampkin's supervised release. Lampkin received adequate notice of his alleged offense and the district court did not clearly err in concluding that Lampkin possessed marijuana with intent to distribute.

A.

An alleged denial of due process is reviewed de novo. *United States v. Legree*, 205 F.3d 724, 729 (4th Cir. 2000). A defendant on supervised release has a due process right to a fair and impartially conducted revocation hearing. *See United States v. Copley*, 978 F.2d 829, 831 (4th Cir. 1992) (interpreting due process rights to apply to revocation hearings for probation and supervised release). Even though a revocation hearing is not part of a criminal prosecution, a defendant is nonetheless entitled to some due process rights because both proceedings "are similar in that the end result may be a loss of liberty." *United States v. Ferguson*, 752 F.3d 613, 616 (4th Cir. 2014) (citing *Morrissey*, 408 U.S. at 487–88).

7

In *Morrissey*, the Supreme Court articulated a number of minimum due process requirements for parole revocation, including the right to "written notice of the claimed violations." 408 U.S. at 489. These requirements have been formalized in the Federal Rules of Criminal Procedure and interpreted to apply to revocations of supervised release. Fed. R. Crim. P. 31(b)(2); *Copley*, 978 F.2d at 831.

Due process requires that a defendant receives written notice of his alleged violation of supervised release so that he is informed of the charges against him and may prepare a defense. Fed. R. Crim. P. 32.1(b)(2)(A); *United States v. Chatelain*, 360 F.3d 114, 121 (2d Cir. 2004). Lampkin argues that he did not have adequate notice of his violation because the Supervised Release Violation Report failed to identify the specific state statute he violated. Additionally, Lampkin argues that the district court violated his due process rights by applying federal criminal law at his revocation hearing. We disagree.

First, we reject Lampkin's contention that a petition to revoke supervised release which alleges the commission of a new crime must provide the specific statute that the defendant allegedly violated to constitute adequate notice. Lampkin's reliance on *United States v. Havier*, in which the Ninth Circuit vacated a district court's revocation order under similar circumstances, is misguided. 155 F.3d 1090, 1093 (9th Cir. 1998). *Havier* held that a revocation petition must specify the statute the defendant has been charged with violating "*if the offense being charged is not evident from the alleged condition of probation being violated.*" *Id.* (emphasis added). In *Havier*, the revocation petition merely stated that the defendant's arrest "constituted an offense with the element of

8

eminent [sic] life-threatening danger to law enforcement personnel." *Id.* at 1092. Noting that the district court and the parties themselves appeared to speculate about which specific offenses were alleged in the revocation petition, *Havier* held that the defendant lacked sufficient notice that he was charged with disorderly conduct with a deadly weapon. *Id.* at 1093–94. The court determined the error was not harmless because the proceedings below would have focused on Havier's intent instead of his conduct. *Id.* at 1094.

Our review of the record indicates that the charged offense is evident here. In contrast to the revocation petition in *Havier*, paragraph two of the Supervised Release Violation Report specifically provided Lampkin with notice of the charged offense by stating that Lampkin "was arrested by the Berkeley County Sheriff's Office for Possession with Intent to Distribute Marijuana." J.A. 16. Additionally, paragraph two provided Lampkin with the date of the alleged new criminal conduct, the grade of the violation, and the factual background underlying the charged offense. Based on this information, Lampkin had adequate notice that he had been charged with a state-law felony offense for possessing marijuana with intent to distribute. While we are not unsympathetic to Lampkin's position that the Supervised Release Violation Report should have indicated the specific South Carolina statute criminalizing possession with intent to distribute marijuana, we merely note the absence of an explicit requirement to do so.

Second, we reject Lampkin's contention that the district court violated his due process right to adequate notice by considering federal crimes of aiding and abetting and

9

conspiracy to revoke Lampkin's supervised release. Specifically, Lampkin argues that the district court's finding that Lampkin aided and abetted an ongoing drug transaction impermissibly relied on federal criminal law because the Supervised Release Violation Report did not allege that Lampkin committed a federal crime.

We find this argument unavailing. Essentially, Lampkin argues that aiding and abetting are exclusively federal crimes, but that is not the case. The relevant South Carolina law expressly criminalizes aiding and abetting. *See* S.C. Code § 44-53-370(a)(1) (stating that it is illegal "to manufacture, distribute, dispense, deliver, purchase, *aid, abet*, attempt, or conspire to manufacture, distribute, dispense, deliver, or purchase, or possess with the intent to . . . distribute . . . a controlled substance.") (emphasis added).

Therefore, we conclude that Lampkin's due process rights were neither violated by the government's failure to explicitly specify the South Carolina statute for possession with intent to distribute in the Supervised Release Report nor by the district court's discussion of Lampkin's conduct in aiding, abetting, and conspiring to distribute marijuana.

B.

We review the district court's decision to revoke supervised released for abuse of discretion. *United States v. Padgett*, 788 F.3d 370, 373 (4th Cir. 2015). But we review the underlying factual determinations for clear error. *Id*.

To revoke a defendant's supervised release, a district court need only find that the defendant violated a condition of supervised release based on a preponderance of the

10

evidence. 18 U.S.C. § 3583(e)(3). Under that standard, the trier of fact must conclude that the existence of a fact is more probable than its nonexistence. *United States v. Manigan*, 592 F.3d 621, 631 (4th Cir. 2010) (citing *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993)). If the revocation sentence falls within the prescribed statutory range, an appellate court will affirm the district court's revocation sentence unless the decision is "plainly unreasonable." *United States v. Crudup*, 461 F.3d 433, 437, 439–40 (4th Cir. 2006).

U.S.S.G. § 7B1.3(a)(1) requires a district court to revoke a defendant's supervised release upon a finding of a Grade A or B violation. For Grade C violations, the court may revoke supervised release or "extend the term of supervised release and/or modify the conditions of supervision" under U.S.S.G. § 7B1.3(a)(2). Lampkin contends that the district court erred by determining that sufficient evidence existed to support a finding that he committed a Grade A violation by possessing marijuana with intent to distribute. Specifically, Lampkin argues that no physical evidence links him to the marijuana found in the Walmart bag and that the admission of Everette's statement during the revocation hearing constitutes the only evidence about his knowledge of the marijuana. While Lampkin concedes that he constructively possessed the burnt marijuana cigars found inside the car, he argues that he merely committed a Grade C violation because simple possession of marijuana is a misdemeanor offense under South Carolina law. Thus, Lampkin argues that, given his criminal history category, the United States Sentencing Guidelines dictate a term of imprisonment between seven to thirteen months. We find

11

that the district court did not clearly err in concluding that Lampkin committed a Grade A violation by possessing marijuana with intent to distribute.

First, we disagree with Lampkin's contention that the lack of physical evidence linking him to the marijuana found in the Walmart bag warrants reversal. Under the clear error standard, the district court "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982) (citations omitted); *see also United States v. Thorsen*, 633 F.3d 312, 317 (4th Cir. 2011) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that . . . [we] would have weighed the evidence differently.").

Affording the government the benefit of all reasonable inferences, we have little trouble concluding that the district court permissibly considered the totality of the evidence to find that Lampkin possessed marijuana with an intent to distribute. This evidence included Lampkin's possession of $465 in cash, Lampkin's role in driving the gold Toyota to obtain the suspicious package, the packaging of the marijuana, and the presence of the package, burnt marijuana cigars, digital scale, and plastic baggies inside the vehicle. *See United States v. Fisher*, 912 F.2d 728, 730–731 (4th Cir. 1990) (holding small quantity of cocaine separated into numerous smaller bags, presence of handguns, and large quantity of cash provided sufficient circumstantial evidence to affirm defendant's conviction for possession with intent to distribute); *see also United States v. Harris*, 31 F.3d 153, 157 (4th Cir. 1994) (holding presence of scales, firearms, and $950

12

cash in defendant's hotel room could support an inference by the jury that defendant possessed crack cocaine with intent to distribute). Based on this circumstantial evidence, the district court did not clearly err by concluding that Lampkin also had possession of the marijuana in the Walmart bag and that the marijuana was going to be further distributed.

Second, we find little merit in Lampkin's contention that Everette's written statement, which explained that Lampkin did not know about the presence of marijuana in the car, defeats the government's claim that Lampkin possessed marijuana with the intent to distribute. The record indicates that the district court considered Everette's written statement, determining that Everette's written statement constituted a mere attempt to exonerate his friends from criminal liability. In revocation proceedings, credibility determinations made by the district court are practically unreviewable on appeal. *See United States v. Cates*, 613 F.3d 856, 858 (8th Cir. 2010) (finding no clear error in district court's stated disbelief of defendant's explanation for testing positive for marijuana). Because the district court had sufficient and valid reasons to conclude that Everette's written statement lacked credibility, we find that the district court did not clearly err.

Even if the district court did not explicitly state that Everette's written statement lacked credibility, the district court did not err in finding that Lampkin committed a Grade A violation by possessing marijuana with intent to distribute. As mentioned above, the totality of the evidence presented at the revocation hearing showed that Lampkin had constructive possession of marijuana remnants found inside the vehicle and

13

the larger amount found inside the Walmart bag. Under South Carolina law, the district court was not obligated to find that Lampkin had actual possession of the marijuana to conclude that Lampkin possessed marijuana with intent to distribute. *See Goldsmith v. Witkowski*, 981 F.2d 697, 701 (4th Cir. 1992) (stating that proof of either actual or constructive possession of drugs satisfies the element of possession required to prove possession with intent to distribute under South Carolina law); *see also State v. Hudson*, 284 S.E. 2d 773, 774–75 (S.C. 1981) (affirming defendant's conviction for possession of heroin with intent to distribute because jury could conclude beyond a reasonable doubt that defendant had constructive possession of heroin found in his home). Once the government proved that Lampkin constructively possessed more than 500 grams of marijuana, the government was not required to offer evidence showing that Lampkin intended to distribute the marijuana. *See* S.C. Code § 44-53-370(d)(4) (stating that a person in possession of more than twenty-eight grams of marijuana is prima facie guilty of having the intent to distribute). Because possession of marijuana with intent to distribute is a felony under South Carolina law, *id.* §§ 44-53-190(D)(11), 370(a)(1)(b)(2), the district court did not abuse its discretion by finding a Grade A violation, revoking Lampkin's supervised release, and sentencing him to twenty-four months in prison.

IV.

Because Lampkin received adequate notice of his violation of the terms of his supervised release and the district court did not clearly err in finding that Lampkin had

committed a Grade A violation by possessing marijuana with the intent to distribute, the district court's judgment is

*AFFIRMED*.