In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2010

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT L. LEE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:09-cr-41-RLM-1 — **Robert L. Miller**, **Jr.**, *Judge.*

ARGUED APRIL 7, 2015 — DECIDED JULY 29, 2015
AMENDED JULY 30, 2015

Before WOOD, *Chief Judge*, FLAUM, *Circuit Judge*, and
KENNELLY, *District Judge*.*

WOOD, *Chief Judge*. While Robert L. Lee was on super-
vised release, his probation officer learned that he had as-
saulted his girlfriend Shelish Pulliam with a small souvenir

---

*Hon. Matthew F. Kennelly of the Northern District of Illinois, sitting
by designation.

baseball bat. The district court issued a warrant for Lee's arrest and initiated proceedings to revoke his supervised release. At the revocation hearing, the government offered the testimony of several law enforcement and medical personnel who interviewed or treated Pulliam. Pulliam had told each of them that Lee was the perpetrator. When Pulliam took the stand, however, she recanted and said that she had made up the assault story because she was mad at Lee. She explained her injuries, which were well documented, as the result of her tripping and falling down the stairs. After reviewing several Indiana criminal provisions, the court concluded that Lee had committed the offense of assault with a deadly weapon. On that basis, it revoked Lee's supervised release and imposed a four-year term of imprisonment.

Although he did not raise this point in the district court, Lee now argues that he was denied due process under both the Fifth Amendment and Federal Rule of Criminal Procedure 32.1 because he did not receive adequate written notice of the precise crime that ultimately led to the revocation. Lee asks us to adopt a *per se* rule that only the citation to a specific statute will suffice to provide written notice of the alleged violation. Only the Ninth Circuit has gone this far. We are not persuaded that either the criminal rules or the Constitution requires this approach, and so we decline the invitation to abandon our own more flexible practice and join the Ninth Circuit.

## I

On September 10, 2009, Lee pleaded guilty to the crime of knowing possession of a firearm in furtherance of a drug trafficking crime. 18 U.S.C. § 924(c). The district court sentenced him on January 25, 2010, to a 60-month term of im-

prisonment and three years of supervised release. Under the provisions of his supervised release, Lee was commanded not to "commit another federal, state, or local crime." He completed his prison term on August 9, 2013, at which time he was placed on supervised release.

On April 4, 2014, the United States Probation Office filed a petition to revoke Lee's term of supervised release. See 18 U.S.C. § 3583(e)(3). The petition informed the district court that

> [t]he probation officer believes that the offender has violated the following conditions of supervision as set forth in the Judgment:
>
> **Mandatory Condition:** The defendant shall not commit another federal, state or local crime.
>
> **Violation No. 1:** On or about March 2, 2014, the defendant committed the offense of Domestic Violence/Battery, Class A Misdemeanor, as evidenced by South Bend Police Report #14-2978.
>
> **Violation No. 2:** On or about March 25, 2014, the defendant committed the offense of Assault and Battery, as evidenced by South Bend Police Report #14-4162.

Three days later, the district judge signed the petition and issued a warrant for Lee's arrest. On April 9, 2014, Lee made an initial appearance before the court and waived his right to a preliminary hearing; the court ordered him to be detained pending the revocation hearing.

At the revocation hearing on April 24, 2014, the government called four witnesses, each of whom testified about an altercation between Lee and his girlfriend, Pulliam. Their testimony revealed that Lee had beaten Pulliam on March 26, 2014, severely enough to require her to be treated at a

hospital near South Bend.

Dr. Bruce Harley, the emergency room physician who treated Pulliam, testified that she had told him that she had been hit with a baseball bat; he confirmed that her injuries were consistent with this account. The government also introduced photographs taken that evening, and Dr. Harley identified them as fair and accurate representations of how Pulliam looked when he examined her. Jill Perri, a nurse at the hospital, also testified that Pulliam had told her that her boyfriend had caused her injuries. Perri called the police on Pulliam's behalf, but Pulliam had been discharged by the time the police arrived after a CAT scan showed no skull fracture or internal bleeding.

The police interviewed Pulliam at her home the next day. Officer Robert Anton testified that Pulliam told him that Lee had hit her several times including once on the head with a small baseball bat. The government also submitted photos of Pulliam's injuries that Officer Anne Hayes took at the time of the police interview. In her testimony, Officer Hayes described the photos. Finally, Kevin Reed, a U.S. Probation Officer who conducted a home visit at Lee's house on April 1, 2014, testified that he observed a small wooden baseball bat in Lee's living room and that Lee had lied to him about a "ladyfriend" staying in his bedroom.

Lee then called Pulliam to testify on his behalf. She acknowledged that she had accused Lee of hitting her with the bat, but she said that she had lied about that because she was angry at Lee. In fact, she asserted, her injuries had resulted from two falls. She suffered her head injury, she said, when she tripped in the bedroom. The injuries to her buttocks (which were plain from the photographs) came about,

she said, when she fell down the stairs, as she rushed down carrying her 11-month-old grandson, a diaper bag, and a car seat. In order to rehabilitate its witnesses, the government called an investigator from South Bend's Special Victims Unit, Amy Bennett. Bennett testified that she spoke with Pulliam on April 10, 2014, and that Pulliam had said Lee had hit her. Bennett also testified that domestic-violence victims often recant statements made to police or medical personnel.

The district court credited Pulliam's earlier statements over her later denials. Accordingly, it found that Lee had violated the terms of his supervised release by committing the crime of battery with a deadly weapon under Indiana law, and it imposed a four-year term of imprisonment. The district court entered its revocation judgment on April 24, 2014, and Lee filed a timely appeal.

## II

A court may revoke a person's supervised release if it finds by a preponderance of the evidence that that person has violated a condition of supervision. See 18 U.S.C. § 3583(e)(3). Normally, we look only to ensure that a revocation decision was not an abuse of discretion; constitutional arguments, however, receive *de novo* review. *United States v. Mosley*, 759 F.3d 664, 667 (7th Cir. 2014). But this all assumes that the defendant has properly preserved his objection. Lee did not object to the adequacy of the written notice he received on any ground—constitutional or otherwise—either before or at the revocation hearing. He has thus forfeited the point and our review is only for plain error. FED. R. CRIM. P. 52(b); see also *United States v. Jordan*, 742 F.3d 276, 278 (7th Cir. 2014) ("Jordan's lawyer repeated his Fifth Amendment concerns in his closing argument."). Under this limited

standard, the error must "[be] clear and uncontroverted at the time of appeal, … affect substantial rights[,] and seriously impugn the fairness, integrity, or public reputation of judicial proceedings." *United States v. Sewell*, 780 F.3d 839, 851 (7th Cir. 2015) (citations and quotation marks omitted).

As supervised release revocation hearings are not criminal prosecutions, "the full panoply of rights that the Constitution guarantees to criminal defendants does not extend" to them. *United States v. Neal*, 512 F.3d 427, 435 (7th Cir. 2008); see also *Jordan*, 742 F.3d at 279 ("[A] revocation hearing is not a trial, so the defendant's interests are less compelling than for someone still presumed innocent."). Nevertheless, reduced rights are not the same as no rights at all. The Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471, 488–89 (1972), outlined six features of constitutional process that are due to a person already convicted of an underlying crime, but who now finds herself in danger of losing her conditional liberty. These procedural protections include "written notice of the claimed violations of parole." *Id.* at 489 (citation omitted). While *Morrissey* involved parole revocation, its holding has been extended to proceedings to revoke probation and supervised release. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (probation); *United States v. Kelley*, 446 F.3d 688, 690–91 (7th Cir. 2006) (supervised release).

Federal Rule of Criminal Procedure 32.1, "largely a codification of *Morrissey*," *United States v. LeBlanc*, 175 F.3d 511, 515 (7th Cir. 1999), requires the district court to follow detailed procedures in a proceeding to revoke or modify probation or supervised release. For the purposes of this appeal, our focus is on the rule's requirements for a revocation hearing. A person is entitled to written notice of the alleged vio-

lation; disclosure of the evidence against him; an opportunity to appear, present evidence, and question any adverse witnesses unless the court determines that the interest of justice does not require his appearance; notice that he has a right to retain counsel; and an opportunity to make a statement including presenting information in mitigation. FED. R. CRIM. P. 32.1(b)(2).

Lee maintains that both Rule 32.1 and the Constitution require a citation to a specific statute when the alleged violation involves a federal, state, or local crime. Although we accept such a citation as sufficient evidence, we have never held that it is necessary, nor have most of the other circuits. See *United States v. Kirtley*, 5 F.3d 1110 (7th Cir. 1993); see also, *e.g.*, *United States v. Sistrunk*, 612 F.3d 988, 992 (8th Cir. 2010); *United States v. Chatelain*, 360 F.3d 114, 121 (2d Cir. 2004); *United States v. Evers*, 534 F.2d 1186, 1188 (5th Cir. 1976). Only the Ninth Circuit has taken this step. *United States v. Havier*, 155 F.3d 1090 (9th Cir. 1998). In *Havier*, the Ninth Circuit held that "when a revocation petition alleges the commission of a new crime and the offense being charged is not evident from the condition of probation being violated, a defendant is entitled to receive notice of the specific statute he is charged with violating." *Id.* at 1093.

We acknowledge that it often may be useful to cite a specific statute. The notice of revocation might be so vague that without such a specification the defendant might not understand what underlies the government's effort to revoke. Requiring the government to specify the statute assures that the written notice satisfies both Rule 32.1 and *Morrissey*. But there is an important distinction between saying that something can be a good practice and saying that either the rule

or the Constitution requires it. This case illustrates that line.

In many cases—and Lee's might be a good example—the Ninth Circuit's rule might hinder the probation officer's work. Finding the precise statutory provision could delay the filing of a petition. Here, the probation officer might justifiably have thought that quick action was necessary because of the possible danger to Pulliam and her grandson. A ruling requiring the citation of a statute could also be self-defeating. Any probation officer who was unsure exactly how the federal government, a state, or a locality might categorize certain conduct would simply cite anything that conceivably might apply. That would not improve the information conveyed by the revocation notice.

In any event, Lee's situation differs from Havier's in several respects. Lee could not have had any doubt about the conduct underlying the accusation because the revocation notice cited the specific police report at issue. That report contained allegations that he had assaulted Pulliam with a baseball bat. The notice that Havier received was nowhere near as complete. See *Havier*, 155 F.3d at 1092 ("[D]efendant's conduct during his arrest by Tucson Police constituted an offense with the element of eminent [*sic*] life-threatening danger to law enforcement personnel."). It is true that for both Lee and Havier, "the district court judge and counsel themselves appeared to be speculating about which … violations could have or should have been alleged in the revocation petition." *Id.* at 1093. But during Havier's hearing, the range of offenses considered was far greater. They included "felon in possession of a firearm, assault on a police officer, and reckless display of a weapon. One offense proposed, failure to obey a police officer, turned out to be a

traffic violation." *Id.* In Lee's case, the government and the district judge were discussing the elements of the alleged offense and what was an aggravating factor. There is a big difference between choosing among several distinct offenses and evaluating which elements are required for one offense.

It is also significant that our review is only for plain error, while *Havier* was decided as a *de novo* matter. Lee's argument does not grapple with this distinction. He is asking us to adopt, for the first time, the Ninth Circuit's *per se* rule. Even if we were inclined to do so (which we are not), it would be impossible for us to say that the district court committed plain error, or even error at all, because the court's action did not transgress a rule that was "clear and uncontroverted at the time of appeal." *Sewell*, 780 F.3d at 851 (citation and quotation marks omitted).

With *Havier* rejected, we have only the task of deciding whether the government provided Lee with enough "basic facts" to give him "written notice of the alleged violation" within the meaning of Rule 32.1(b)(2)(A). See *Kirtley*, 5 F.3d at 1113. In *Kirtley*, the revocation petition "set forth the specific condition of probation that Kirtley violated and the two-month period during which the violations occurred, as well as some basic facts regarding the violation, such as the specific statute and rule Kirtley disobeyed and the exact date of his suspension." We held that those details were "constitutionally sufficient." *Id.* Lee's notice included the specific condition ("The defendant shall not commit another federal, state, or local crime") and two dates of the violations (March 2, 2014 and March 25, 2014), only the latter of which the government pursued. This leaves the question whether the description in the notice was adequate.

Once Lee read the petition, he and his lawyer had the identifying number of the South Bend Police Report upon which the government planned to rely. We are given no reason why they would not have been able to retrieve that report. It would have revealed that the police had spoken to Pulliam, that she accused Lee of hurting her, and that she said he had done so with a deadly weapon (the small baseball bat). The key here is the degree of specificity, not how it was achieved. We urged this specificity in *Kirtley*: "We wish to make clear that the notice Kirtley received represents the minimum acceptable notice. In order to avoid close questions regarding adequate notice in the future, we urge probation officers and other government officials to include additional specificity where possible." *Id.* at 1114 n.4; see also *Chatelain*, 360 F.3d at 121 (taking the same approach).

We add for completeness that even if Lee could show that the written notice fell short of the requirements of Rule 32.1 and that that error was clear and obvious, he has not demonstrated how his substantial rights were affected or how any error seriously undermined the fairness of the proceedings. See *Sewell*, 780 F.3d at 851; *Sistrunk*, 612 F.3d at 992 ("[E]ven if we were to find that the notice was ineffective, under the Ninth Circuit's holding in *Havier*, we would still affirm, holding that failure to be harmless error because Sistrunk did not suffer prejudice."). Once again, Lee's access to the police report, which contained the underlying facts of the alleged offense, defeats his ability to show prejudice from any shortcoming in the notice. Lee says that if he had known the specific statutory provision, his attorney would have conducted the cross-examination of the government's witnesses differently or to a greater degree. Perhaps so, but this vague possibility is not enough to show prejudice. At

the hearing, Lee's lawyer had the chance to cross-examine each of the government's witnesses, and the lawyer took that opportunity for the first five; he chose not to cross-examine Bennett. Nothing more was required.

### III

The petition to revoke Lee's supervised release provided adequate written notice of the asserted grounds for revocation, as required by Rule 32.1 and the Constitution. Accordingly, we AFFIRM the district court's revocation of Lee's supervised release.