In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 19-2970

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY C. JORDAN,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:04-cr-20008-SEM-TSH-1 — **Sue E. Myerscough**, *Judge.*

———————————

ARGUED NOVEMBER 17, 2020 — DECIDED MARCH 18, 2021

———————————

Before EASTERBROOK, HAMILTON, and ST. EVE, *Circuit Judges.*

HAMILTON, *Circuit Judge.* During his first three months while on supervised release, Anthony Jordan consistently tested negative on drug tests and called the probation office to find out about his next required tests. Nonetheless, over two days in June 2019, he missed a drug test and two assessments, prompting his probation officer to petition to revoke his supervised release. The district court ruled that Jordan

had committed the violations, revoked his supervised release, and sentenced him to six months in prison followed by 26 months of supervised release (including 120 days in a halfway house). Jordan has appealed. We conclude that the district court did not sufficiently explain its decision, consider Jordan's defense that his violation was unintentional, or otherwise ensure that its sentence conformed to the parsimony principle of 18 U.S.C. § 3553(a). We therefore reverse the judgment.

Jordan was originally convicted of crimes involving crack cocaine in violation of 21 U.S.C. § 841. In March 2019, he began three years of supervised release. Shortly afterward, his probation officer petitioned to revoke supervised release based on three alleged violations. The first two occurred on June 3, 2019, when Jordan allegedly did not complete his required mental-health and substance-abuse assessments. The next day, June 4, he failed to attend his required drug test. In a separate memo, the probation officer reasserted each violation. Based on these violations, the probation office recommended that Jordan return to prison for 10 months, followed by another term of supervised release. Jordan contested the petition.

The district court held a hearing on the petition. Before receiving testimony from the government, the court asked Jordan's counsel if he objected to the violation memorandum. Counsel said "no." The court then announced that it was adopting "the factual findings of the violation memorandum." After this announcement, the government's witnesses testified that Jordan had missed the two assessments on June 3 and the drug test on June 4, that they could not reach him,

and that it therefore took longer to set up these evaluations, which eventually occurred.

Jordan testified next about his efforts to comply with his conditions of supervised release. Regarding drug testing, he testified that every day, either he, his mother, or his girlfriend would call the testing and assessment facility to check in to see if testing was required that day. He testified that, on June 4 (the date of his missed drug test), he called but he did not hear his number come up on the recorded message. He acknowledged that he had not listened to the entire message but explained that he thought that he had listened to the portion that applied to him. He also emphasized that he had not tested positive in any of his previous drug tests (about three per month).

Regarding the mental-health and substance-abuse evaluations, he testified that he had met with his probation officer on May 28 to discuss the screenings. He agreed to them, and the officer said that she would contact him. According to Jordan, at that meeting, he thought that they had planned for his next assessment to occur on June 26. It was not until that date (June 26), he explained, that he realized that he had missed his appointment for June 3.

Jordan testified about his other efforts to comply with conditions of release. He explained that he gave his probation officers multiple phone numbers so they could reach his mother when he was not available, as occurred when he was in church. He also noted that he went to an emergency room on June 17 to seek a mental-health evaluation:

> [W]hen the doctor talked to me, he told me that they didn't do it there. He gave me a list of

> places to go there. And I went from there. And every time I went to take a drop, I asked them about my mental health evaluation. And I kept telling them I need it done. And at this time, I didn't even know she had referred me. I was just trying to do it on my own, you know.

A month later, Jordan said, he called the assessment facility from 6:00 am to 11:00 am for an assessment, finally reaching a clinical supervisor whom he saw that day. The supervisor said that he had the power to schedule assessments on that day but did not do so; instead he tried to call Jordan later to schedule an assessment. Eventually, the supervisor reached Jordan's mother and scheduled an assessment for mid-August. The assessment never occurred, however, because by that time Jordan was in custody on the charged violations.

After this testimony, the district court ruled for the government. It found by a preponderance of the evidence that Jordan had violated the terms of his supervised release by "failing to participate in drug testing as directed, failing to participate in substance abuse treatment as directed, and failing to participate in mental health treatment as directed." Echoing the statement it made before hearing any testimony, the judge "adopt[ed] the factual findings of the violation memorandum as my own."

The court then turned to sentencing. The government asked for 14 months of imprisonment, arguing that "until the defendant is ready, willing, and able to admit that he has some sort of problem, there's no conditions that this Court can put in place to make him take those actions." It added, "we do have to punish as well as protect the community." Defense counsel, in response, emphasized Jordan's efforts to comply:

First, Jordan (or family members) called the testing facility every day, including on June 4, the day of his missed drug test, to see if he had to be tested that day. Second, Jordan had never tested positive, despite tests occurring about three times each month. Third, the violations were "technical," as evidenced by the fact that the supervisor of the assessment facility could have but did not schedule an assessment during an in-person meeting with Jordan. Counsel summarized:

> I have a hard time placing all the accountability on Mr. Jordan for those missed assessments, especially when he indicates that he took steps, he attempted to complete the assessments when he showed up for the drug tests, when he went to Carle Clinic, and they were subsequently completed while he [was] in custody by Dr. Wolfe at SIU.

After hearing these arguments, and preparing to discuss new terms of supervised release, the court warned Jordan that if he failed to object, the failure could result in "waiver." The court then sentenced Jordan to six months in prison followed by 120 days of community confinement in a half-way house, and after that 26 months of supervised release.

On appeal, Jordan asserts that the district court wrongly revoked his term of supervised release and insufficiently justified the sentence of reimprisonment. He repeats that he did not intend to miss drug testing because he called the testing facility on June 4 and he also tried to get his assessments scheduled. Citing *Morrissey v. Brewer*, 529 U.S. 694 (1972), and *United States v. Yancey*, 827 F.2d 83, 89 (7th Cir. 1987), Jordan argues that "[d]ue process requires a written statement as to the evidence relied on and reasons for revoking" release, but

the district court did not supply that statement. The government responds that more words were unnecessary because the testimony and the violation memorandum, which the court adopted, proved the violations. Moreover, it added, Jordan's testimony that he lacked an intent to violate was "implausible." Although Jordan has served his prison sentence, he is still in his term of supervised release, so the appeal is not moot. *United States v. Raney*, 797 F.3d 454, 461 n.6 (7th Cir. 2015).

Before delving into the merits, we pause briefly on the standard of review. The government contends this court should review for plain error. It maintains that because Jordan said at the outset of the hearing that he did not object to the probation officer's memo, he has forfeited his challenge to the court's later adoption of the findings in the memo. See *United States v. Lee*, 795 F.3d 682, 685 (7th Cir. 2015); Fed. R. Crim. P. 52(b). We disagree. As Jordan points out, he asked for and proceeded to a live hearing with contested testimony on the issue of violation. Jordan therefore adequately informed the court and the government that, although he accepted the filing of that memo, he challenged its allegations of violations. That seems to be how the district court understood his position. Near the end of the hearing, when the district judge adopted the findings of that memo "as my own," she again invited Jordan to object. But that invitation was in the context of the proposed conditions of supervised release, not the findings of a violation. Moreover, a defendant is not required to take exceptions to rulings after a judge makes them. Fed. R. Crim. P. 51(a). Thus, no forfeiture or waiver occurred here.

Jordan's core claim is that the district court failed to suffi-
ciently justify both the revocation and prison sentence. He in-
vokes the due process clause of the Fifth Amendment, but we
think this case fits better within "the supervisory power of an
appellate court to review proceedings of trial courts and to
reverse judgments of such courts which the appellate court
concludes were wrong." *Cupp v. Naughten*, 414 U.S. 141, 146
(1973). This authority permits us to require sound procedures
that are not specifically commanded by the statutes or other
relevant provisions. *Thomas v. Arn*, 474 U.S. 140, 146–47 (1985);
*Terry v. Spencer*, 888 F.3d 890, 895 (7th Cir. 2018). Under our
supervisory authority, we see two flaws in the district court's
procedures and decision.

First, the district court did not mention, let alone ade-
quately explain, its rejection of Jordan's defense that he lacked
intent to violate the conditions of supervised release and had
made reasonable and good faith attempts to comply. Such an
explanation is required. *United States v. Hollins*, 847 F.3d 535,
539 (7th Cir 2017). The need to address the defense is particu-
larly important here because, before hearing a word of testi-
mony, the court told Jordan that it was adopting the findings
of violations from the probation officer's memo. We do not
know why the court seemed to make findings about viola-
tions before the planned hearing on whether violations oc-
curred. But because it seemed to signal its view of the facts
before hearing any evidence, we think that after the court
heard the evidence, it needed to explain why that evidence
did not move the court from that earlier view. And it did not
do so here. We hasten to add that a revocation may have been
justified. We recognize that the testimony of offenders on su-
pervised release might not be credible, and we know that dis-
trict judges may hear a lot of creative excuses for failing to

comply with conditions of supervised release. But without an evaluation of the defense, we cannot review whether the district court's rationale for rejecting it was permissible.

Second, the district court did not adequately explain its decision to imprison Jordan again for six months. Sentences must always conform to the "broad command" of the parsimony principle, which requires that sentences be "'sufficient, but not greater than necessary to comply with' the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017), quoting 18 U.S.C. § 3553(a). This principle is especially important in a case like this where the alleged violations were not criminal, the defendant asserted a lack of intent, and there was evidence of reasonable efforts and good faith, putting in question which of the purposes of sentencing apply.

The Supreme Court has observed that prison is not necessarily appropriate for every violation of a condition of release, such as where, as the defendant asserts here, the defendant made bona fide efforts to comply and does not obviously pose a threat to society. *Bearden v. Georgia*, 461 U.S. 660, 668–70 (1983). "The congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty." *Johnson v. United States*, 529 U.S. 694, 708–09 (2000). Sending a defendant back to prison for a violation that occurs despite reasonable and good faith efforts to comply may well undermine that transition.

The district court did not address whether Jordan's violations were willful, why his mitigation arguments were not persuasive, and why prison was necessary. We have often

said in sentencing appeals that a district judge need not "belabor the obvious," e.g., *United States v. Sainz*, 827 F.3d 602, 608 (7th Cir. 2016), but the reasons for sending Jordan back to prison are not obvious to us on this record.

The government conceded correctly at oral argument that the district court did not address Jordan's mitigation arguments—that, despite his good-faith efforts to comply daily, through inadvertence and confusion he missed tests on only two successive days and otherwise attended and passed every other test. The government argues only that the district court's decision is nonetheless adequate because the facts needed to support it are in the record and Jordan's testimony about his attempts to comply was not credible.

The problem is that we have no idea whether the court found Jordan's testimony incredible, why it deemed his defense insufficient, or why a new six-month prison sentence was needed to fulfill the factors in §§ 3583(e) and 3553(a). See *United States v. Boultinghouse*, 784 F.3d 1163, 1177 (7th Cir. 2015) (court must provide explanation sufficient to enable appellate review). If the district court had reasons to give six months of imprisonment, it needed to share those. If that had happened, we would have reviewed them for an abuse of discretion, as is the standard for revocation of supervised release. *United States v. Musso*, 643 F.3d 566, 570 (7th Cir. 2011).

We do not mean to imply that imprisonment may never be the appropriate response to violations like those charged here, missing a drug test and appointments for treatment. The district court may have had in mind the notion that the assurance of reimprisonment—even for a short time for intentional or even careless violations—deters future violations. We understand that different judges have different philosophies in

balancing the factors under § 3553(a). But the district court needed to say explicitly why it thought that six months in prison was necessary for a defendant who had tested negative on every test and committed no other violations.

The judgment revoking supervised release is REVERSED.