In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 18-3675

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

SHAWN KARST,

*Defendant-Appellant*.

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 17-CR-215 — **William C. Griesbach**, *Judge*.

_____

ARGUED NOVEMBER 4, 2019 — DECIDED JANUARY 27, 2020

_____

Before WOOD, *Chief Judge*, BAUER and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Leaving an untouched pizza on the table, Shawn Karst exited a restaurant with two men who wore Mesticas motorcycle club vests. The three drove off on their bikes, and a few minutes later one of the two men with Karst pulled the trigger in a drive-by shooting. At the time, Karst was on supervised release.

Authorities petitioned for Karst's revocation, but the request traveled a bumpy road. The magistrate judge vacated the petition after finding the evidence presented did not show probable cause to believe Karst violated the release conditions. The district judge quickly reinstated the proceedings. He later held a final hearing at which release was revoked, and Karst received 30 more months of imprisonment.

On appeal Karst challenges the lack of a preliminary hearing on the reinstated revocation petition, whether the district court provided him with adequate notice of his allegedly violative conduct, and the district court's failure to consult the sentencing guidelines when deciding his revocation term.

## I.

In 2011, Karst pleaded guilty in the U.S. District Court for the Northern District of Indiana to the manufacture and possession of marijuana plants with the intent to distribute. He was sentenced to 60 months of imprisonment and four years of supervised release. His supervised release was later transferred to the Eastern District of Wisconsin. Two conditions of that release pertain here: Karst was required to (1) "not commit any further federal, state or local law violations" and (2) not associate with "persons known by him to be engaged, or planning to be engaged, in criminal activity."

In 2018, Karst was involved in a shooting in Appleton, Wisconsin, although the parties dispute to what degree. Minutes before the shooting, surveillance video shows the triggerman, Karst, and a third individual talking inside a pizza parlor. They looked out the windows as the victim walked past and entered his pickup truck. The triggerman handed his Mesticas motorcycle club vest to Karst. Then all

three men left the restaurant one after another, leaving an un-eaten pizza behind. Outside the restaurant Karst returned the vest to the triggerman, and all three drove off on their motor-cycles.

The Appleton Police Department gathered traffic camera footage of the intersection where the shooting occurred. That video shows the three individuals driving their motorcycles up next to the victim's pickup. The triggerman fires several rounds into the truck, with Karst driving two to three seconds behind. All three motorcyclists then proceed through a red light and accelerate after the truck.[1]

Based on these events, the U.S. probation department, with the government's concurrence, petitioned for a warrant alleging Karst violated the conditions of supervision de-scribed above. The warrant issued, Karst was arrested, and three court hearings followed.

In the first, a preliminary hearing under Federal Rule of Criminal Procedure 32.1(a), Magistrate Judge James Sickel sought to "determine whether there [was] probable cause to believe that a violation occurred." The government called only Appleton police officer Michael Medina, who testified to the video evidence of Karst's involvement in the shooting. Karst objected to Medina's testimony under the best evidence rule, which the magistrate judge sustained. Absent further ev-idence, the magistrate judge found the government had failed to show probable cause that the defendant violated the release

---

[1] The record reflects the victim's truck was damaged, but none of the rounds struck the victim.

conditions, so the magistrate judge vacated the petition to revoke supervised release and released Karst.

The next day, after the probation department reported the outcome of the preliminary hearing, Chief U.S. District Judge William Griesbach *sua sponte* held a second hearing. The district judge concluded that the magistrate judge's evidentiary ruling was incorrect. After reviewing the magistrate judge's authority under 28 U.S.C. § 636, as well as the supervised release statute, 18 U.S.C. § 3583, the district judge concluded the magistrate judge was without "the authority to dismiss a charge of a … violation of supervised release" and even if the magistrate judge had such authority, a district court judge "always has the authority to overturn the magistrate judge's determination, when it's clearly erroneous." The district judge ruled that the magistrate judge had clearly erred and reinstated the revocation proceedings:

> Now, Mr. Karst was released from custody when the magistrate judge did not find a probable cause to believe that he committed the crime based on the—what I view as the erroneous evidentiary ruling, and I don't intend to revisit that. But this matter was set for a final hearing. I will preside over the final hearing. It's still set for final hearing. And if you would like a preliminary hearing before the final hearing, I can grant that and re-hear that. Otherwise, we'll simply proceed to the [final] hearing.[2]

---

[2] Here the transcript says "preliminary hearing." Because the district judge began this sentence with the word "[o]therwise," we presume he meant to refer to the "final hearing," which on September 7, 2018 had

Karst's counsel objected:

> Your Honor, for the record, I will—I want to at
> least note my objection, so there's not any indi-
> cation that I'm waiving it. … I haven't had any
> sort of past experience where something has
> been brought by the Court short of one of the
> parties. And my understanding is the parties
> in—in these cases are the Government and the
> defense. The Government did not file anything
> as far as I'm aware that asked the Court to re-
> view this, so I would object.

During this second hearing, the district judge invited counsel
three times to let him know, presumably by supplemental
briefing, if his analysis was incorrect. While the parties each
successfully moved to adjourn the final revocation hearing,
neither party submitted any substantive filings about the pre-
liminary hearing or the reinstatement of the revocation peti-
tion.

Two months later the third hearing, which was the final
revocation hearing, took place before Chief Judge Griesbach.
Karst testified he met the two other individuals involved in
the shooting that day and suggested they get lunch together.
They drove to a pizzeria, went inside, ordered food, and then
Karst stated they saw a man who looked like he was "messing
with the bikes or, you know, admiring them pretty closely."
The shooter handed his motorcycle vest to Karst, they left the
pizzeria, and Karst returned the vest to the shooter outside.
Karst maintained he did not know the shooter had a weapon,

---

already been scheduled for September 21, 2018. That final hearing was
later adjourned three times and took place on December 7, 2018.

and that he was not involved in any discussion about going after the man who had looked at their motorcycles. Although Karst later joined the Mesticas motorcycle club, Karst did not believe he was a member of any motorcycle club on the day of the shooting. He said he knew nothing about a feud between the Mesticas and the DC Eagles motorcycle clubs. Karst also claimed that because "he has bad hearing, and his bike was very loud, as was the bike next to him," he was unaware the shooter fired at the victim until later. Admitted as exhibits at this third hearing were videos from the pizza parlor and from a traffic camera at the intersection where the shooting took place.

The government contended the shooting related to a motorcycle club rivalry. Karst and the other two men wore outfits with Mesticas logos, and the victim wore a shirt with the logo of Mesticas' rival, the D.C. Eagles. The government also suggested Karst "help[ed] conceal [the shooter's] identity" by carrying the shooter's vest "in case the victim … look[ed] in his mirrors or look[ed] behind him." The government asked that Karst's supervised release be revoked because he broke the law and associated with people engaged in criminal activity.

The defense argued there was no record evidence Karst was party to a crime[3] of recklessly endangering safety[4] or that

---

[3] Wis. Stat. § 939.05 **Parties to crime** at (2) states in part: "A person is concerned in the commission of the crime if the person: (a) [d]irectly commits the crime; or (b) [i]ntentionally aids and abets the commission of it; or (c) [i]s a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it."

[4] The second-degree version of this crime criminalizes recklessly endangering another person's safety, while the first-degree adds the element

he was a member of a conspiracy to commit a crime.[5] The pizza parlor video had no audio, and the other two motorcyclists did not testify about conversations among the three. Karst denied they discussed shooting at the victim. Karst also argued that because he trailed the triggerman by two or three seconds, he did not assist in the shooting. Due to the lack of evidence, the defense asked that Karst's supervision not be revoked.

The court ruled from the bench and found Karst not credible. The court noted how Karst had accepted the shooter's vest and then returned it, presumably to help the shooter conceal his identity. From review of the pizzeria video, the court also found that the victim did not approach the three motorcyclists' bikes. The court concluded the interaction among the three motorcyclists "show[ed] familiarity and much more than having just met on the streets." The court found the motorcyclists had chased the victim's pickup truck and that Karst would have seen the shooter, who was directly in front of Karst with a hand outstretched firing the gun. The court agreed there was no audible description of a plan but inferred from the interaction among the motorcyclists inside the restaurant, throughout the chase, and during the shooting "that there was an effort and a plan to go after this individual." The court found the preponderance of the evidence showed Karst "conspired as a party to a crime to conduct this drive-by

---

of acting with utter disregard for human life. Both are felonies. WIS. STAT. § 941.30(1)–(2).

[5] Wis. Stat. § 939.31 **Conspiracy** states in part: "[W]hoever, with intent that a crime be committed, agrees or combines with another for the purpose of committing that crime may, if one or more of the parties to the conspiracy does an to effect its object, be fined or imprisoned or both … ."

shooting or the shooting of another person" and thus violated the conditions of his supervised release.

The hearing moved directly to sentencing. The government recommended the statutory maximum of three years incarceration. The defense noted the guidelines recommended 12 to 18 months incarceration and requested Karst receive 12 months because he was not the shooter and other mitigating factors. The court agreed that Karst was not the shooter but found his testimony on his lack of involvement incredible. The court concluded Karst's involvement deserved significant punishment, in part, because the time and location of the shooting posed a great danger to the public. After hearing the defendant's allocution but without mentioning the sentencing guidelines, the court imposed a revocation sentence of 30 months incarceration. Karst appealed.[6]

## II.

### A. Preliminary Hearing for
### Supervised Release Revocation

At the second hearing, the district judge (1) found the magistrate judge committed clear error in applying the best evidence rule, (2) reiterated that the matter was set for a final hearing, and (3) did not conduct a preliminary hearing to find probable cause. On appeal, Karst first argues the district court erred by reinstating the revocation petition without finding there was probable cause to support the petition. Karst points

---

[6] Karst was released from custody by the magistrate judge on September 6, 2018. He remained out of custody for three months until the final revocation hearing on December 7, 2018, at which, after supervised release was revoked, he was remanded into custody.

to the text of Federal Rules of Criminal Procedure 32.1(b)(1)(C)—"[i]f the judge does not find probable cause, the judge must dismiss the proceeding"—and argues "the government had no more shown probable cause before the district judge than it had the previous day before the magistrate judge."

The parties disagree as to this court's standard of review on this first issue. Karst argues for de novo review and the government for plain error review. We are persuaded Karst sufficiently objected to the district court's decision to reinstate the proceedings. But Karst's first argument on appeal is not that the district court erred by reinstating the revocation proceedings; instead, he contends the district court erred by not conducting a preliminary hearing after it reinstated the proceedings. Karst did not raise, note, or argue this point before the district court and so seemingly failed to preserve a claim of error under Federal Rule of Criminal Procedure 51(b). Because no objection to the lack of a preliminary hearing was ever made, the defendant never presented to the district court the full argument he now raises on appeal, and the district court never had the opportunity to consider Karst's reasoning on that point. That counsels plain error review under Federal Rule of Criminal Procedure 52(b). *See Puckett v. United States*, 129 S. Ct. 1423, 1428–29 (2009) (plain error review limits appellate court authority and induces timely raising of objections before the district court, which is ordinarily in the best position to resolve the issue).

Even if the objection at the second hearing is viewed more broadly to encompass Karst's entire argument, we still conclude we review for plain error given the events in the district court. During the second hearing, the district judge noted his

intention not to "revisit" the magistrate judge's probable cause decision. But the district judge twice offered to hold a preliminary hearing, and during one of those offers he said he would "re-hear" arguments on the probable cause issue. The defense did not accept this offer to re-hear the probable cause question. Even more, during the second hearing the district judge invited counsel three times to let him know if his analysis was incorrect, including by supplemental filings. The defense did not pursue the matter further and thus never presented to the district court the full argument he now raises on appeal. If the defense had done so, the district court may have proceeded differently. This failure to timely assert a right constitutes a forfeiture, *United States v. Olano*, 507 U.S. 725, 733 (1993), which also results in plain error review. *United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019) ("We review forfeited arguments for plain error … .).

Plain error review requires the defendant show an error that: (1) was not intentionally waived; (2) was plain, that is, clear or obvious; (3) affected the defendant's substantial rights; and (4) seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Brazier*, 933 F.3d 796, 800 (7th Cir. 2019) (citing *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016); *Olano*, 507 U.S. at 732–34).

Karst fails on the third element, however; he has not shown that the lack of a preliminary hearing affected his substantial rights. At the final revocation hearing, Karst had a full opportunity to contest the facts underlying the charges against him. His counsel cross-examined the only adverse witness, and Karst testified to his own version of the facts. No witnesses or documents have been identified as a result of the

lack of a preliminary hearing, and Karst has not argued that the lack of such a hearing affected his revocation sentence. Indeed, as a result of the sequence of hearings, Karst remained out of custody for three months between the magistrate judge's dismissal of the revocation petition and its resolution at the final hearing. Karst has not demonstrated how the lack of a preliminary hearing caused him prejudice, so the plain error standard is not satisfied here. *See United States v. Robertson*, 367 Fed. Appx. 301, 304 (3d Cir. 2010) (failure to hold preliminary hearing not plain error when district court otherwise complied with Federal Rules of Criminal Procedure 32.1 and defendant did not show how lack of preliminary hearing caused prejudice); *United States v. Chin*, 224 F.3d 121, 123 (2d Cir. 2000) (citing *United States v. Companion*, 545 F.2d 308, 312–13 (2d Cir. 1976)) (failure to hold preliminary hearing did not deprive defendant of due process because any defect was irrelevant in light of valid revocation hearing); *Companion*, 545 F.2d at 312–13 (failure to hold a preliminary hearing was not prejudicial error when defendant had already been found in violation of probation following revocation hearing). Regardless of his efforts on the other three elements, Karst has not shown an error that affected his substantial rights.

## B. Notice of Violation

Karst also argues the district court erred by not identifying which federal, state, or local crime he committed. Even if the crime could be discerned, Karst contends, the district court's factual findings are "fundamentally at odds with" its conclusion that by a preponderance of the evidence Karst conspired with the other individuals to commit the shooting. The record does not show Karst objected on these points, so we again

review for plain error. *United States v. Lee*, 795 F.3d 682, 685 (7th Cir. 2015).

Federal Rule of Criminal Procedure 32.1(b)(2), which governs revocation proceedings, entitles the defendant to notice of the alleged violation. But this court does not require district courts to identify a "specific crime" when revoking release. *Lee*, 795 F.3d at 686 ("Lee maintains that both Rule 32.1 and the Constitution require a citation to a specific statute when the alleged violation involves a federal, state, or local crime. Although we accept such a citation as sufficient evidence, we have never held that it is necessary, nor have most of the other circuits." (citations omitted)).

Karst admits the written revocation petition provided him adequate notice, and we conclude the district court's statement that Karst "conspired as a party to a crime to conduct this drive-by shooting or the shooting of another person" is more than sufficient to notify him of the violative crime. The district court need not have labeled Karst's conduct as "recklessly endangering safety," nor sorted out the complexities of Wisconsin inchoate criminal law. Our precedent does not impose a specificity requirement on the district courts but instead looks to whether the revocation petition "provides [the defendant] with enough 'basic facts' to give him 'written notice of the alleged violation' within the meaning of Rule 32.1(b)(2)(A)." *Id*. at 687 (citing *United States v. Kirtley*, 5 F.3d 1110, 1113 (7th Cir. 1993)). That standard is satisfied here.

Karst also argues the district court's "conclusion that Mr. Karst … was a party to such a crime by conspiracy is fundamentally at odds with the district court's own factual

findings." Wisconsin criminal law of conspiracy[7] requires: "(1) An agreement among two or more persons to direct their conduct toward the realization of a criminal objective" and "(2) [e]ach member of the conspiracy must individually consciously intend the realization of the particular criminal objective." *State v. Hecht*, 116 Wis. 2d 605, 624, 342 N.W.2d 721, 732 (1984) (citation omitted). Karst asserts the district court erred by finding he was party to a crime of "shooting at a person" because the court found the conspiracy's goal "was to either frighten or shoot [the victim]." Karst reasons that because the court found the conspiracy's intent may have been broader than his intent, the district court failed to show he "individually consciously intend[ed] the realization of the particular criminal objective," here of shooting at a person. Rather, Karst notes, he "may have simply intended to give [the victim] a scare."

Karst oversimplifies the district court's finding. That court found Karst was "well aware of the plan" to "either frighten or shoot the victim" and that Karst "joined [his associates] in committing this crime." The criminal objective of this conspiracy—shooting at a person—can lead to a victim being shot at or merely frightened. Neither the district court nor this court need analyze the specific intent underlying the criminal conspiracy. The district court found Karst and his associates agreed to shoot the victim, Karst was aware of the plan, he joined his associates in a conspiracy to shoot at the victim, and he aided the conspiracy when he accepted the shooter's vest

---

[7] Karst assumes Wisconsin state law applies on this question, but the supervised release terms require he "not commit any further federal, state or local law violation," so federal conspiracy law could also apply. We consider Karst's argument on the basis he advances it.

and then returned it, presumably to help the shooter conceal his identity. These findings support the district court's conclusion that Karst committed a crime violating his supervised release.

## C. Sentencing Guidelines at Revocation Hearing

Karst's final arguments are that during the sentencing phase of the final revocation hearing (the third hearing) the district court erred by failing to consider and apply the Sentencing Guidelines and by failing to take his mitigation testimony into account. We review de novo these claims of procedural error. *United States v. Bustos*, 912 F.3d 1059, 1062 (7th Cir. 2019).

"As with an initial sentencing decision, when deciding whether to revoke a term of supervised release, the district court must begin its analysis with the recommended imprisonment range found in the Guidelines." *United States v. Snyder*, 635 F.3d 956, 959 (7th Cir. 2011) (citation omitted). The district court failed to identify the appropriate category of offense under the Guidelines and to consider the applicable sentencing range. The government concedes that fact. We require remand to the district court if that court did not consider the Guidelines when revoking a term of supervised release, *id*. at 962, and we will so order.

Whether the district court failed to sufficiently consider Karst's arguments in mitigation is more complicated. During the sentencing phase, Karst argued he had a minimal role in the crime, asserted he had adjusted to supervision and stayed out of "trouble" for years since his release, reiterated that he "did not know this was going to happen," and claimed he tried to cooperate with the police. In the sentencing remarks

the district court responded to some but not all of these state-
ments. On remand, the district court should evaluate each of
the mitigation points Karst raises.

### III.

For these reasons, we AFFIRM IN PART, REVERSE IN
PART, and REMAND for further proceedings. We see no
grounds for Karst's call to reassign this case under Circuit
Rule 36, so we decline that request.